The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, please be seated. All right, we will begin argument in our first case here, Hayes v. Prudential Insurance. And Ms. Luzzi, I think you are first up, am I right? Yes, Your Honor. We'd be happy to hear from you. Thank you, Your Honors. May it please the Court, my name is Layla Luzzi, I'm an attorney from Greenville, South Carolina. Thank you for the opportunity to present this case to you today. Your Honors, the issue before this Court in this case is very narrow, and that issue is whether this Court is going to recognize the extraordinary circumstance of medical incapacity to equitably toll a life insurance conversion period. This case involves an ERISA-governed life insurance case on the life of Tony Hayes. Mr. Hayes received his life insurance conversion notice on December 8th of 2015, pursuant to the terms of the policy he had until December 23rd to convert his life insurance coverage. He was medically incapacitated and unable to convert during that time period. Shortly thereafter... Well, his daughter... You're not disputing the fact that Mr. Hayes received notice, that Tony Hayes received notice of the deadline for the conversion? That's correct, Your Honor. Okay, go ahead. And two weeks after that, he still hadn't contacted the company to convert. He had two weeks of notice and he never responded. Correct, Your Honors, but he did begin on January 14th of 2016 to attempt to convert his coverage. He contacted his company and he was apparently under the... Wasn't that the disability insurance and not the life insurance? No, Your Honor. He did contact his employer, DSM Services, on January 14th to request his conversion for the life insurance. Apparently, he was under the mistaken impression he was to receive a packet of information similar to his COBRA notification. DSM then said, no, you need to call Prudential, which he did on January 18th. Unfortunately, Prudential was closed for the Martin Luther King Jr. holiday. He promptly called Prudential the next day on January 19th and said, hey, I haven't received anything to convert my life insurance. I understood I was to receive a packet of information. Prudential said, well, let me check into that for you. You had 31 days from your date of termination. Let me see what I can do. Having not received anything, he called Prudential back on January 27th and said, hey, I really need to keep this life insurance. Can you please send me what I need to convert my coverage? Prudential again told him, you're late. We don't know if we can do anything, but let me see what we can do. Tony never received anything to convert his life insurance before his death on June 27th. His wife filed to receive the life insurance benefits. Prudential denied that claim, asserting he did not convert in time. As part of the appeal process, I submitted on behalf of Ms. Hayes as her attorney, medical information from Mr. Hayes' treating physician, Dr. Peter Stein, stating that he was medically incapacitated and unable to convert during the conversion period. Prudential had the claim reviewed by a reviewing physician, Dr. Wadhwa, who also came to the conclusion that Tony was medically incapacitated and could not convert on time. In the final denial letter, Prudential stated, while we do agree that he was incapacitated and could not convert his coverage in the time specified under the policy, we are required to adhere to the terms of the policy and therefore we must deny this coverage. Well, you do agree, excuse me, Judge, I'm sorry. Go ahead, Judge Hudson. But you do agree that it's discretionary on the part of the company whether or not to extend the policy. It's written right into the policy what the terms are. And equitable tolling is something that's mandatory on the part of the company. It's within their discretion. Why did they abuse their discretion here? Well, Your Honors, equitable tolling is an equitable principle that allows for the forgiveness of the strict adherence to time deadlines as set forth. That's discretionary. Well, Your Honors, we do believe that they abused their discretion in denying his benefits because they put him in a no-win situation. They said, well, we agree that you can't convert in the time specified in the policy because you're medically incapacitated, but we're not going to let you do it afterwards because you're late. So under the principles of ERISA, that's inequitable. And this Court has recognized equitable tolling in other circumstances. Counsel, can I ask, just, I think I know the answer to this, but I just want to make sure. You never brought a claim under A3, did you? No, Your Honor. The reason I ask that is that there is a provision of ERISA that has the words equitable relief in it, but that provision is A3, not A1B. What am I supposed to do about that? Well, the essence of the claim is in 1132A1B. Equitable tolling is not an equitable remedy. It's an equitable principle that gets you to the benefit. By way of example, if someone is asking for the Court to employ equitable tolling for a statute of limitations issue, which is what this Court is probably most familiar with, we're not asking for the Court to rewrite the statute of limitations. What we're asking the Court to do is forgive the statute of limitations to allow the individual the original relief they seek. But I think that brings us back to Judge Hudson's problem. So you agree this ERISA plan has what I think is pretty standard language for ERISA plan, a clause that says the plan administrator gets discretion in construing the terms of the plan, right? I assume at this point every single ERISA plan has that term. Is that right? Yes, Your Honor. Okay. So under Firestone v. Brook, if the ERISA plan has that term, the question isn't what we think the plan should mean. It isn't what we might interpret the plan to mean, like if we were interpreting a federal statute. It's whether the plan administrator abused their discretion in construing the plan. And, you know, this is a plan that on its terms doesn't say anything about tolling or giving people more time. It just says you have this deadline. And I guess I understand the plan administrator to have said, I am not going to construe this plan as allowing this deadline to be extended. And I guess that just brings me back to Judge Hudson's question. Why is it an abuse of discretion for the plan administrator to say that? So equitable tolling, Your Honor, takes you outside of the abuse of discretion standard of review. Equitable tolling has been employed by sister circuits with this very same situation as in time deadlines set forth in ERISA. Specifically, as cited in my briefs, both the Eastern District of New York and the Southern District of Georgia have dealt with the time deadline in an ERISA policy where an insurer has denied an individual the right to file a claim because they've missed the time deadline set forth in the policy. Sure, and I think these are the cases you're talking about. Those cases are saying, look, so federal law imposes an exhaustion rule, sort of like the Prison Litigation Reform Act. It says if you want to challenge the decision of your ERISA plan, you have to exhaust your internal remedies as a precondition to going to court, right? And so my understanding is the courts that have said that have said, well, a world in which ERISA, the statute, says in order to go to court, you have to pursue the internal appeal process. That internal appeal process is sort of part of your judicial remedy, and maybe federal courts can then impose sort of equitable tolling. But this isn't part of the appeal process, right? This is a separate question. This is about the time for converting the nature of your benefits. What's your best case for the proposition that federal courts can just incorporate equitable tolling in that situation? So equitable tolling, Your Honors, as Your Honors also know, for the case of Gale v. UPS, in that case it was an 1132A1B claim, and it was a late filing of an appeal. Right, so that's the category of cases I just gave. What's your best authority for the proposition outside that category, federal courts? Well, this would be a case of first impression in this federal circuit. Obviously, the statutory scheme of ERISA does not recognize equitable tolling, so this court would be required to fill the gap in that. What you're asking, counsel, is you're asking the plan administrators basically to depart from the terms of the plan. We've been pretty strict in holding plan administrators to the terms of the plan, and how can we then turn around and say, well, what we've said about the terms of the plan is relatively unimportant. We're now going to require you to depart. And it seems to me that to hold this in abusive discretion is to downplay the part that the terms of the plan play in ERISA law. And one of the problems a plan administrator faces is if you grant an extension of the deadline in this one case, how then can you not grant an extension in another case, and another claimant comes along and says, well, I've heard that you waived the deadline in this previous case. I want it waived, too. And you create problems of even-handedness and morale, where some people seem to get favored treatment and departures from the plan and others are held strictly to the plan. And it begins to create a certain level of havoc within the plan administration, where basically on principles that are hard to pin down, one person gets lenient treatment and another doesn't. So there's a problem that plan administrators face about simply inequitable treatment among claimants. Do you see that? I do, Your Honor, but I think this would be a situation where this would be an extremely exceptional circumstance that would be determined on a case-by-case basis. I think the difference in this particular case is that you have a plan administrator that has reviewed a claim and said, we agree that this person could not convert the coverage in the time specified by the policy, but we're not going to allow him to do so afterwards. I think it's patently unfair and against the purpose and core of ERISA, which is to protect employees and employee benefit plans, to basically admit that someone is medically incapacitated and can't adhere to a policy deadline. And then you have the individual that calls a mere 20-some-odd days later to do this, and you say, well, let's look into it. We'll see what we can do. We'll do what we can for you. And it just doesn't let them do it. It doesn't give an explanation of why they never denied the claim. What are we supposed to make of the fact that, as I understand it, the record indicates that with the assistance of his daughter, Tony Hayes made a number of calls to prudential, I guess it was seven in all, in pursuit of the long-term disability. And maybe it was more vigorous in pursuing the long-term disability because that didn't involve a payment of a premium, whereas the life insurance where it converted would have involved a payment of a premium. But does your claim of incapacity hold up in light of the fact of the diligent efforts that this individual and his daughter made in pursuing long-term disability? I think it does, Your Honor. The test for equitable tolling, when you're speaking of an extraordinary circumstance, only requires reasonable diligence, not maximum feasible diligence. The Southern District of Georgia, in the case that I've cited in my brief, says that if you have a situation where you're going to deny someone equitable tolling because there's a hypothetical third individual that could assist them in doing so, then that would apply to almost every individual. There's a situation, this is a situation, where Tony was faced with a number of things at the same time. He was in a coma for a couple of weeks between October and November. Then he was terminated from his job. His short-term disability ended, so he was scrambling to apply for long-term disability. Then his health insurance ended, so he was trying to apply for COBRA, which would require the payment of premiums, which he did end up doing. So, Your Honor, I don't think it was a premium issue, and I think that is demonstrated by the fact that Tony did diligently attempt to apply for the conversion of life insurance promptly in January. I mean, if we're talking about the tolling of the conversion period, again, it's less than 30 days. He began trying to convert this life insurance on January 14th, and the original conversion period ended on December 23rd. How difficult is it to convert? I mean, basically, you just have to call the company and say, I would like to convert, but is the paperwork that formidable that you can't convert within the given deadline? I thought it was a relatively straightforward process, the conversion process. Yes, Your Honor, but respectfully, the incapacity of Tony has been determined by the plan administrator, so I don't think that's an issue in this case. Both Prudential and their reviewing physician came to the conclusion that he was medically incapacitated and unable to convert within the period set forth in the policy. Counsel, I agree that under the facts of this case, you have a pretty sympathetic claim, but I guess I'll just return to you the thing I started with. To the extent we're contemplating, I'm not saying we would, but to the extent we're contemplating that under the facts and circumstances of this case, it seems really, really harsh, why isn't that much better dealt with under A3, which, among other things, just has a freestanding grant of equitable power to the courts, rather than trying to shoehorn this into the terms of the plan, which I think, as Judge Wilkinson points out, we generally tell plan administrators they have to stick to the terms of the plan, so I'm a little worried about telling them, actually, sometimes you have to stick to the terms of the plan, but sometimes you have to ignore the terms of the plan. Why isn't a remedy in this case, if there was any available, much more better fit under A3? Certainly, this court is required to formulate any remedy that it would like, but at its core, this is a claim for benefits, so the equitable tolling in this case, if you told the conversion period until Tony called, the result of that would be Kathy Hayes for life insurance benefits is ripe, and therefore the 1132A1B claim would be ripe, and she would be awarded the benefits that she seeks under the terms of the plan. I'm over. Thank you. If there are further questions, I'm happy to hold off until those questions are asked. Judge Hytens, do you have anything further? I do not. All right, Judge Hudson. No, sir. All right, thank you. You have some rebuttal time as well. And may I briefly conclude, Your Honors? Let's hear from Mr. Morrison. Good morning, and may it please the Court. I think that this is a case that is determined by a couple of very basic ERISA principles. One, the plan document controls. And two, as the Supreme Court has repeatedly said, there is a very stringent, carefully constructed remedial structure under ERISA. And the plaintiff here, there's no dispute the coverage ended by 11-17-2015. There's no dispute that Mr. Hayes was given notice of his right to convert. It was in the plan booklet. You can look at Joint Appendix 67. The employer sent him a letter actually before he terminated employment, December 14, 2015, telling him, and that's at Joint Appendix 125, that he had a right to convert and he needed to contact Prudential about that. And then the December 8th letter, Joint Appendix 119, again reiterates that, gives the phone number for Prudential and says you have to call. And to answer the Court's question about the conversion process, while it's not in the record, I would represent that it is very straightforward. You pay the premium, and I think it's about a one-page piece of paper. Could you bring the microphone a little closer to you? Certainly, Your Honor. Is that better? Yes, that helps. It sure does. So the conversion process is very simple and could have been executed. There's no question that Mr. Hayes had notice of his right to convert. He didn't do it. Counsel, you agree with your friend on the other side that in its decision document, the plan administrator accepted the premise that he was incapacitated, right? I do not, actually, Your Honor. So if you look at it, and this is referring, again, to the Court's ECF pagination at 181 of the Joint Appendix, the first full paragraph on that page is, I think, what counsel is referring to. And it states there that after thorough evaluation of the documentation in the file and the documentation received for purposes of appeal, we have determined we must uphold the denial of the claim. While the records do support that Mr. Hayes was incapacitated due to his conditions and symptoms during the period of time he had to convert coverage, under ERISA, Prudential is required to administer the plan in strict adherence to its policy provisions. Okay, that to me sounds like what she just said. Well, she said extra words. What she said to you was that Prudential found that he was unable to convert. They didn't go that far. And a lot of ink was spilled in the back and forth in the briefing on this issue, but both Dr. Wadhwa and the plaintiff's own doctor didn't go that far. They said, yes, this man was incapacitated. We acknowledge he was very sick. He was in and out of the hospital. Well, so let me give you a hypo and ask you how you think the plan would deal with this situation. So I want you to imagine that he gets in a car accident. So day one, he's in a car accident that puts him in a coma. Day two, he is fired. He's fired on day two and he's in the coma. During that period of time, he's mailed the notice of the obligation to convert. He's in a coma the entire time. The 30-day period expires while he's still in a coma. The day after the period expires, he wakes up, and in literally the first words out of his mouth, he says, oh, my God, oh, my God, I need to convert my life insurance. And then he picks up the phone and he calls the plan administrator and says, I need to pick up, I need to convert my life insurance. I mean, were we really saying that in that? I mean, explain to me either why your argument doesn't entail that that person also loses or explain to me how that possibly makes any sense in the world. If he's literally in a coma the entire period. Well, you were asking the question I expected the court to ask of me, which is where do you draw the line. And I agree with Your Honor that that creates a fundamental problem for plan administrators because if we accept the premise that you can inject into this analysis of the plan terms, and the plan terms here clearly say you must apply, and in fact go so far as to say you may not convert after the 92nd day, after the end of your coverage, effectively whether or not notice is given to you. So even if the employer never tells you you have a right to convert, you still have to do it, and if you don't do it in time, no conversion coverage. And it's a bright line rule, and the plan is designed to be enforced according to its terms. The court's precedents and the Supreme Court's precedents have said we enforce the plan according to its terms. Now, so I think the answer is in order to make it workable and not to turn this into a constant debate about, well, what's too far, how incapacitated is enough incapacitated to render somebody unable to convert, that you simply follow the terms of the plan. And I will note that... No, unless they bring an A3 claim. I suppose that person might have an A3 claim. They might. They might. They might be able to bring a claim for reformation of the plan, which is an equitable remedy to say essentially let me have another shot at this because my situation was so extreme. And might a court on that record agree? I don't know. That's not this case. This case was a claim for benefits under the plan, and there's no dispute that under the plan Mr. Hayes was not entitled to convert. But during that period of time, his daughter was handling his affairs, and didn't the record reflect that she was aware two weeks before they denied it that he had to file an immediate claim and he didn't do so during that period of time? That's correct, Your Honor. I mean, their family was on notice. Family was on notice. There's never been a question that they were fully aware of the obligation to make a conversion application. And did it take any action? Let me ask you this. What part in the decision not to extend the deadline, what part did it play that Mr. Hayes and his daughter had made the seven calls to or have any calls to Prudential in pursuit of the long-term disability claim? Did the fact that they made diligent efforts during this time period to pursue long-term disability, did that factor into the administrator's discretionary decision? No, Your Honor, it didn't. The language that the administrator included in the decision about its conclusion on Mr. Hayes' condition, as I indicated earlier, they didn't go through a further analysis on that issue because they essentially decided that they were not going to grant an exception. All right. Then what was the basis of the decision? The decision was based on an application of the plan language, which says you have to submit the conversion application within, essentially at the latest, 15 days after you've been given notice of the right to convert. Why did you mention the fact that he had made the seven calls to Prudential in pursuit of long-term disability, which indicated you questioned the incapacity claim? I think that's in your brief. Yes, yes. Why did you bother to mention it if it made no difference to your decision? Understood, Your Honor. So there's two different things. One is, the plan administrator didn't get into that analysis because it concluded it's not going to apply, it's not going to extend the time period. It addressed the argument in its denial letters because the ERISA claim procedure regulations require the plan administrator to address the arguments that are made. So they addressed it and they said, well, we acknowledge that you're making these arguments, we've looked at them, but we're not going to extend the deadline. The reason we brought it up in our briefing is that if you get through the fact that the only claim here was a claim for benefits under the plan, under 502A1B of ERISA, and you could show that there was some kind of abusive discretion, or you were willing to allow plaintiff on appeal to amend the complaint to bring a 502A3 claim, you then have to look at whether or not there's equitable tolling. Your view is that even though it didn't factor into the administration's actual decision, that it still is relevant in terms of ultimately the call on the equitable tolling question? Yes, it would be relevant if you get to that point. Obviously, if you stick to the plan terms and determine that this is a case about applying the plan terms to the uncontested facts before the court, you never need to reach this issue because Mr. Hayes didn't apply in time. So this is a sort of a second level argument? I might even say fourth level because there's an initial problem that, again, is a legal argument that was not addressed by the plan administrator because it wasn't confronting the question of equitable tolling, and that's whether or not Mr. Hayes exercised diligence in order to satisfy the requirements of equitable tolling. And as has been discussed, he and his family members were in contact with Prudential throughout the period. But that's not the ground in which the plan administrator denied benefits. Correct. So we can't consider that in the first instance, can we? We review the decision of the plan administrator. We don't make the decision ourselves. Well, I don't think you need to review that. You were just saying that Judge Wilkinson's question was a fourth order question because you said the first order question was this diligence issue, but I don't think we can reach this diligence issue. I think that's correct, Your Honor. I think that if the court was inclined to entertain discussion of this at all, the district court didn't reach this issue and didn't evaluate it. So at a minimum, I think the matter would go back to the district judge to look at this question, but I think, again, it would be an appropriate matter at that point to refer it back to Prudential to say, you know what, Prudential, we have decided that you need to read into the plan flexibility in the deadline, and we'd like you to apply that and tell us what your answer is because you didn't answer before. And I would note that it is common in certain kinds of benefit plans for there to be deadlines where the plan actually says, you know, subject to your ability to do this. It's fairly common in long-term disability plans for the claim deadline to include language that says, essentially, you need to file a claim within X number of days of when your disability begins if you're able to do it because they're anticipating in certain circumstances, like in a disabled individual's circumstances, that that person may not have the capacity physically or mentally to make a claim. That language isn't in this plan at all with respect to life insurance. The plaintiff, a couple of other points I just wanted to address. The plaintiff has spent a lot of time talking about cases that are supposedly comparable from other circuits, but I believe all of them deal with the question of election of coverage under COBRA, which we believe is a fundamentally different question. COBRA is a federal statute that requires health plans to allow people to continue coverage under the plan for a period of time. And there have been a number of cases where courts have considered what happens when somebody is, to the court's hypothetical, for example, in a coma and unable to act. That's the Branch v. Burndt case from the 11th Circuit where the administrator for the participant went to court and the court said, we'll give you some flexibility in terms of your ability to get continuation coverage. That's a fundamentally different circumstance. And the reason we think the difference is important is that to decide whether to apply equitable tolling at all, first you have to get to the question of whether that's properly in front of the court, and we don't think it is. And then secondly, you would have to decide that there is some policy reason to allow that. And there's nothing in ERISA, nothing in the federal law that suggests that Congress meant there to be flexibility about continuing life insurance. So what about these cases, I assume you're familiar with them, these cases that have allowed equitable tolling of internal appeal deadlines regarding the plan? What would you have to say about those? Well, I think the court's analysis on that, or your analysis, Judge Hayden's, on that was correct, that those are deadlines that are sort of part and parcel of the litigation process. And the question is whether or not you can get into court on a claim that's otherwise properly there. Conversion is about whether or not Prudential is to be forced to enter into a life insurance contract with Mr. Hayes. Because the conversion claim, what conversion does is it takes the person out of the group policy and gives them an individual life insurance contract with the carrier. And I think that's a fundamentally different question that goes to the scope and nature of the benefits the plan is intended to provide. The right to convert, is that set forth in federal law? The right to convert is not. Or is it purely a plan creation? It is not in federal law, Your Honor. It is actually a creature of state insurance law, principally. Pretty much every state, including North Carolina, which is the state in which this policy was issued, require group insurers to offer a conversion right. And those are saved from preemption because of ERISA's insurance carve-out? Correct. Do those state laws indicate any time deadlines on the conversion right? Or are they silent on that point? They typically do indicate a time deadline. They typically state, and I believe the language in this plan tracks what's in the North Carolina insurance rules and essentially says you must include in your plan language giving somebody up to 31 days after they lose coverage to convert or 15 days after they receive notice. And, of course, to get their products approved for issuance in the state carriers. There's no claim here that the terms of the plan violated state law? No, there is not. Okay. I did want to note on the question of whether the court should venture down the path of equitable tolling. The Supreme Court's decision in Cigna versus Amara, I think, provides the clear-cut answer to that and the answer to plaintiff's argument that she was unable to bring a claim under 502A3. And as the court is likely aware, in the Cigna case, the Supreme Court held, the plaintiffs in that case were trying to argue that the plan had been modified  and the Supreme Court held clearly you cannot bring a claim under Section 502A1B to modify the plan. The plan is the plan. But then the court goes on to say, but you may have equitable remedies under 502A3 and proceeds to describe a number of those in a non-exclusive list of them and the courts come back to that issue again and again. And I think that answers the question of how this case should be resolved because Cigna teaches in a 502A1B claim, you apply the terms of the plan. Here there's no dispute about what the plan said. There's no dispute about the fact that Mr. Hayes did not convert. And that ends the discussion. He's entitled to no or his widow is entitled to no benefit under this plan. And to the extent there was to be a claim getting into the issue of equitable tolling, that needed to be raised before the district court under 502A3 and it wasn't. And so the district court correctly decided the case. And unless the court has other questions of me, we would ask the court to affirm. Judge Hydens, Judge Hudson, do you all have any further questions? No, sir. Neither do I. All right. Thank you, counsel. All right. If you have some rebuttal time, Ms. Levy, we'd be happy to hear from you on that. Thank you, Your Honor. Just to this court's and opposing counsel's point of Mr. Hayes' family assisting him with his long-term disability claim during this period, by the same token, the long-term disability carrier and the life insurance carrier are the same individual, Prudential. So as Mr. Hayes and his family are calling Prudential to assist with this long-term disability, why did Prudential not inquire as to the conversion period or the conversion rights afforded to him under the policy? During these telephone calls, Mr. Hayes asked about all of his employee benefits that he was aware of at the time, long-term disability, COBRA, everything. In fact, Prudential was well aware. They have a legal requirement to do that. That would be a courtesy on their part, right? I would argue that they would have the fiduciary duty as both the insurer of both of the plans. To inquire about other coverage under other policies? As insurer of both of the plans, yes, Your Honor. Okay. In fact, when referring the case to Dr. Wadhwa for review, they said, hey, Mr. Hayes is drawing long-term disability benefits under this plan. We have a copy of that file that contains medical records if you think you need it. So obviously there was cross-communication between both of the claims with both of the policies on this particular individual. The only other thing that I had in conclusion, Your Honors, is the District of New Jersey when speaking of equitable tolling in the context of both ANARISA and a COBRA claim stated, principles of equity and common decency suggest that a person should not be deprived of desired and needed coverage when incapacitated from continuing it. The circumstances of incapacity warrant a reasonable opportunity to cure the default and reinstate the coverage. In light of ANARISA's recognized remedial purpose, which this court must construe broadly, it is inconceivable to this court that a statutory scheme, which is otherwise so generous and protective of employees enrolled in employee benefit plans, would in this instance ignore both equity and reason by requiring employees suddenly incapacitated and physically unable to secure their benefits to forfeit so basic a need as, in this particular case, life insurance. Your Honors, I submit that a gross injustice would result if Tony was denied the ability to convert his coverage after the expiration of the conversion period outlined in the policy. So I submit that equitable tolling should be applied as a matter of fairness and that this court should recognize equitable tolling such that Kathy Hayes is awarded the life insurance benefits that she seeks. Thank you. Thank you very much, Counsel. Thank you. We appreciate it and we thank both sides for their presentations today.
judges: J. Harvie Wilkinson III, Toby J. Heytens, Henry E. Hudson